# James Caldwell, Appt., *v.* Hammell Minor and Sarah J. Minor, his Wife.

A bill against a trustee, to compel her and her husband to make a deed for real estate which had been conveyed to her in trust for her daughter, where the conveyance did not confer on the trustee any power to convert the realty into money, cannot be maintained on the ground that the trustee has executed an agreement to convey.

If the trust was void, and the title remained in the person designated by the deed as trustee, the court will not enforce the execution by her of a deed, under an agreement executed by her, while she was living with her

NOTE.—For the necessity of separate acknowledgments by married women, see note to Andrews v. Wade, 3 Sad. Rep. 138. Specific performance of a contract to sell land will not be enforced, where the wife refuses to join in the deed (Riesz's Appeal, 73 Pa. 485); unless the vendee agrees to accept a deed from the vendor alone, and to pay the purchase price (Harrigan v. McAleese, 1 Monaghan (Pa.) 450, 16 Atl. 31; Burk's Appeal, 75 Pa. 141, 15 Am. Rep. 587).

husband, and there was no separate acknowledgment of the instrument by her, as required by the statute in case of a married woman.

(Argued November 5, 1886.   Decided November 15, 1886.)

October Term, 1886, No. 168, before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.   Appeal from a decree of the Common Pleas No. 1 of Allegheny County dismissing a bill to compel a married woman and her husband to make a deed.   Affirmed.

F. M. Love and others conveyed a lot of ground in the nineteenth ward, city of Pittsburgh, to "Sarah J. Minor in trust for Edith M. Minor, daughter of Hammell Minor and the said Sarah J. Minor," by deed dated November 10, 1881.   The consideration was $6,500.   Sarah J. Minor paid $1,500 of the purchase money, and gave a mortgage for the balance, $5,000 same date:   "Sarah J. Minor, trustee of Edith M. Minor, daughter of Hammell Minor and the said Sarah J. Minor," which mortgage remains unpaid.   She afterwards employed W. J. Hastings, a real estate broker, to sell the lot of ground, and it was in charge of the broker for this purpose for more than a year. Meanwhile she heard that James Caldwell wanted to purchase property out in the direction where this lot of ground lay, and she called on him to get him to buy this lot, but he thought her price too high.   Afterwards he called on Hastings, and on certain conditions agreed to buy the lot of ground.

An article of agreement was drawn up, dated September 29, 1883, between "Sarah J. Minor, trustee of Edith M. Minor, and Hammell Minor, husband of said Sarah," of the first part, and James Caldwell of the second part, by which parties of the first part covenanted and agreed to grant, bargain, sell, and convey the lot of ground to James Caldwell, his heirs and assigns forever, free from all encumbrances and liens, and to make him a good and perfect title, deed to be made forthwith as soon as it could be done, and in consideration thereof James Caldwell covenanted and agreed to pay said "Sarah J. Minor, trustee for Edith M. Minor," $8,000 cash in hand on delivery of the deed.

This agreement was signed and sealed by said Hammell Minor and James Caldwell, and then taken to Sarah J. Minor who signed and sealed it also, "Sarah J. Minor." Hastings. the broker, then took it to her and asked her if that was her signature, and

directed her to add to it the word "trustee." She said it was. her signature and with her pen added "trustee," and Hastings. signed the agreement as witness.

James Caldwell, in a few days afterwards, took possession, had the old buildings torn down, and put up new buildings costing about $4,700, and now used as a dry-goods store, etc. Mrs. Minor has continued to pay Mr. Caldwell the interest on the above mortgage which he now owns, and he has been paying her rent, under a lease of the property, which he took by way of safety until he could get the deed. Mrs. Minor lived near the property, and, of course, saw from the beginning all the improvements Mr. Caldwell made, and was in the store frequently.

After the agreement was executed and delivered and new buildings erected, Mrs. Minor denied that she made the agreement and refused to make the deed. But the evidence shows that she signed and sealed the agreement, admitted her signature and added to it the word "trustee."

James Caldwell filed a bill in equity to compel her and her husband to make the deed. The case was referred to R. B. Carnahan, Master, evidence taken, and his report filed, with his opinion that Mrs. Minor and husband, not having acknowledged the agreement in usual form, could not be compelled to make a deed, and that being trustee, she had no power to sell the lot of ground.

Exceptions to the report having been filed by James Caldwell and renewed in court, and the cause having been argued, the court below sustained the master's report, and dismissed the plaintiff's bill with costs to be paid by plaintiff.

The court below filed no opinion, but "ordered, adjudged, and decreed that plaintiff's bill be dismissed with costs."

The master, *inter alia,* reported as follows:

"The objection to granting to the plaintiff the relief he seeks is that the deed, by which the trust in favor of Edith M. Minor is created, does not confer on the trustee any power to convert the realty into money; in other words, there is no power of sale given to the trustee in the instrument creating the trust. It is true the trustees have the same power of disposing of the trust estate at law as if they were the beneficial owners; but a conveyance by a trustee, without valuable consideration, will not prejudice the title of the *cestui que trust.* And so, if the person taking from the trustee be a purchaser for a valuable considera-

tion, yet if he had notice of the trust, his conscience will be affected with the same equity as the trustee from whom he purchased. Hill, Trustees, 4th Am. ed. 282.

"Here the trust deed is in line of the title to the property, and the plaintiff, in his bill, sets forth the existence of the trust. If, therefore, the trust estate has been perfectly created, and is a valid subsisting trust, it must be manifest that an attempt on the part of Mrs. Sarah J. Minor, trustee, to convey the property would be restrained by a court of equity as a breach of the trust; and had she actually conveyed, her grantee would take nothing but the bare legal title affected with the trust, the whole beneficial estate remaining in the *cestui que trust.* But it is contended on behalf of the plaintiff that the so-called trust is a voluntary one; and it is averred in the bill that the property was purchased by her, Mrs. Minor, as an individual, and that the payment of $1,-500 of the purchase money was made by her out of her own money.

"Mrs. Minor, in her answer, avers that 'the money with which I purchased the lot mentioned in paragraph 1 belonged to the estate of Samuel McCluen, deceased, and unto his heirs, under the intestate laws, to wit: myself, as widow, and the three children above stated.' No evidence was offered before the master to show whether the estate of Samuel McCluen, deceased, had been administered, nor whether the realty of the decedent, if he had any, had been divided among his children, nor whether her dower or thirds remained a charge on the property. In fact, the answer might have been demurred to as insufficient, and as not being directly responsive to the allegation.

"The master cannot, however, treat the answer as a nullity; but taking the view most favorable to the plaintiff and conceding for the purposes of the case that the property was purchased by Mrs. Minor, and that the payment of purchase money made was of her own moneys, and that the trust was, in fact, voluntary in its origin, the master is unable to see that the trustee could revoke or cancel the trust for such reasons. A voluntary trust, if perfectly created, is good and valid, and it is immaterial that no valuable consideration induced its creation. . . .

"It seems to be well settled that the validity of a voluntary trust depends upon the fact of its perfect creation. It is true that in many cases trusts of a voluntary origin, and in form apparently perfectly created, have been relieved against. In all

such cases, the inquiry has been one of fact; that is, Has the trust been perfectly created? Young women often, in prospect of marriage, have made settlements which placed their estates beyond their control, without actually knowing or contemplating or intending that such a result would follow. Such settlements have often been made by persons of both sexes and of all ages, from that of simple majority to extreme old age. The question before the courts in such cases has not been as to the legal effect or form of the instrument, but as to whether the party making the settlement intended to do what the instrument imported; hence, the question whether a settlement or trust has been perfectly created has always been regarded as one of fact to be determined by the age, education, mental character and habits, circumstances, and surroundings of the party asking the relief.

"Mrs. Sarah J. Minor is not asking, in this case, to be relieved of the trust on any ground. The *cestui que trust* is a minor and could not consent to a revocation. The trust is fully acknowledged by the trustee, by the acceptance of the deed conveying to her the legal estate, subject to the trust; and although there is no evidence on the subject, it cannot admit of a doubt that F. M. Love and others conveyed to her in a form creating a trust in favor of her infant daughter, at her own request. She recognized the trust in the bond and mortgage given for the purchase money, and also in the article of agreement under which the plaintiff claims, and in the lease under which he holds as tenant. It is true the trust may be defeated by selling the property at judicial sale, under proceedings instituted to enforce payment of the mortgage, for the mortgage was given for purchase money, and she cannot hold the trust estate in equity, either as trustee or otherwise, without payment of the purchase money. But, subject to the rights of the mortgage creditor, the interest of the *cestui que trust* is a valid and subsisting equitable estate. Should more be realized on a judicial sale of the property than sufficient to meet the claims of the mortgage creditor, the trust would attach to the residue in money.

"But the contention of the plaintiff that the trust is void and that Mrs. Minor is the sole owner of the legal and equitable title, in her own person, to the lot in question, if successful, would equally defeat the claim of the plaintiff to have specific performance decreed, of the agreement of the 29th of September, 1883. In form she contracted as a trustee, and there is no room for the

inference that she contemplated being personally bound by the covenants referred to.   In such a case the court would not exercise its equitable jurisdiction in the absence of evidence of fraud or mistake, and there is no such evidence in this case.   Besides, Mrs. Minor, being a married woman, at the time the agreement was signed, and living with her husband, and being still a married woman, could bind herself to convey real estate only in one form provided by act of assembly; that is, by signing her name and separately acknowledging that the instrument was her act and deed and that she executed it without coercion or compulsion of her husband, before a magistrate or other person qualified to take acknowledgments of deeds and other papers.   There was no such acknowledgment or separate examination in this case. There is no certificate of acknowledgment and separate examination.   The witness, Wm. G. Hastings, who spoke of taking her acknowledgment, plainly meant her admission of the execution of the papers by her and nothing more.

"For these reasons the master is of opinion that the plaintiff has shown no right to the relief for which he prays; and he accordingly recommends that the bill be dismissed, with costs."

James Caldwell took this appeal, assigning as error, the action of the court:   1, in "ordering, adjudging, and decreeing that the plaintiff's bill be dismissed with costs."

2. In not decreeing that Sarah J. Minor, trustee, and Hammell Minor, her husband, make a deed to James Caldwell for the lot of ground in question, as prayed for by him in his bill of complaint.

*Thomas M. Marshall* and *D. W. Bell*, for appellant.—The tendency in the United States is to sustain and carry into effect an executory trust in favor of a wife or child, founded upon a meritorious consideration, if the instrument is under seal, though the rule is not fully established, and perhaps upon thorough consideration would not be acted upon.   1 Perry, Tr. § 109.

In note 1 under this section, after referring to authorities, it is said:   "The above cases of M'Intire v. Hughes, 4 Bibb, 186, . . . are direct decisions upon the point, and fully establish the rule for the state of Kentucky, while the cases of Bunn v. Winthrop, 1 Johns. Ch. 329; Dennison v. Goehring, 7 Pa. 175, 47 Am. Dec. 505; Jones v. Obenchain, 10 Gratt. 259, and most

of the other cases, presented a completely executed trust for enforcement, and the court was not called upon to decide whether a meritorious consideration alone would support an executory trust."

Voluntary trusts in favor of strangers will not be supported. Id. § 111; Kennedy v. Ware, 1 Pa. St. 445, 44 Am. Dec. 145.

Where the gift is not executed by delivery, but the determining act remains *in fieri,* the law gives no force to the mere intention to do it. Crawford's Appeal, 61 Pa. 55, 100 Am. Dec. 609.

In the present case one of the determining acts still remains to be done; that is, paying nearly all the purchase money, *viz.,* the mortgage. And the evidence shows that Sarah J. Minor never had any intention to deliver over the property to her daughter. The trust was not final and complete and the trust was not "completely executed for enforcement." In every case in Pennsylvania decided in favor of voluntary *cestuis que trust,* the trusts were "final and complete."

In Fellows's Appeal, 93 Pa. 472, an attempt was made by heirs of Fellows to have a trust deed, which was voluntary, declared void; but this court, in the opinion read by Justice MERCUR, sustained the deed. · In that case, too, the determining acts were complete and Fellows was dead.

"An agreement founded on meritorious consideration will not be executed as against the settlor himself (Antrobus v. Smith, 12 Ves. Jr. 39;  .  .  .  Villers v. Beaumont, 1 Vern. 101); but if the court interpose where the act is left incomplete, what is it but to wrest property from a person who has not legally parted with it? Another observation which suggests itself is that during the life of the settlor, the ground of the meritorious consideration scarcely seems to apply; for can it be thought to be the duty of a husband to endow his wife during the coverture with a separate and independent provision? Or is a parent bound by any natural or moral obligation to impoverish himself (for such a case may be supposed) for the purpose of enriching a child?" etc. "It is after the decease of the settlor that meritorious consideration becomes such a powerful plea in a court of equity. The wife and children have then lost the personal support of the husband and parent." 1 Perry, Tr. § 108, note 2.

Sarah J. Minor held the property in trust for her daughter, subject, however, to her right to sell it and put an end to the trust. As such trustee she, with her husband, entered into the agreement

with James Caldwell to sell the property to him. It was not necessary that the agreement should have been acknowledged in the usual form for wives, separate and apart from her husband, because married women may be trustees, and it is only their own separate property which they cannot sell without husbands joining, and without acknowledgments separate and apart from their husbands. But their husbands may join in such conveyances for the sake of conformity. Still v. Ruby, 35 Pa. 373; Hill, Trustees, 49.

Sarah J. Minor was trustee of the lot of ground for her daughter; she had a right to terminate the trust, and by her agreement with James Caldwell she bound herself to terminate the trust. The court below erred in not making a decree that she, her husband joining with her, execute a deed to James Caldwell in conformity with the article of agreement. By her voluntary act she is the settlor of this trust. By the express terms of the settlement the property is vested in her, with power to assign. The language of the deed is to "her heirs and assigns, to and for the only proper use and behoof of the said party of the second part, her heirs and assigns forever, in trust nevertheless, and for the use of and benefit of the aforesaid Edith M. Minor, her heirs and assigns forever."

Thus the finding of the master, that the article of agreement is not effective because the husband did not join, is answered by the power granted to the trustee to assign. There is no reason why a married woman should not be a trustee for her own child, without the joinder of the husband.

*Barton & Sons,* for appellees.—Could Mrs. Minor devest herself of the trust and convey the property? This question is so fully discussed by the master that we cannot add to it or strengthen it, as he is fully sustained by the authorities he cites.

Kennedy v. Ware, 1 Pa. St. 445, 44 Am. Dec. 145, cited by appellant, simply rules that "an equitable assignment of a chose in action, being an executory contract, must have a consideration to support it," etc., and does not touch this case.

Crawford's Appeal, 61 Pa. 55, 100 Am. Dec. 609, was a question as to a parol gift from husband to wife and it was held good, although no actual delivery had been made to the wife by the husband in his lifetime.

That case also rules that mere volunteers, where no creditors

are concerned, cannot be heard to question the gift or trust. In this case, if Mrs. Minor chose to create a trust in favor of her daughter, none can question it except those whose rights existing at the time were prejudiced or affected.

PER CURIAM:

We agree with the learned master that the trust created by the deed of F. M. Love et al., in favor of Edith, daughter of Hammell Minor and Sarah J., his wife, was valid, and that as by that deed there was no power of sale conferred on the trustee, her attempt to sell, by the agreement with the appellant, dated on the 29th of September, 1883, was void and of no effect.

We also agree with the alternative proposition that if the trust be regarded as of no effect and the title remains in Mrs. Sarah J. Minor, yet, nevertheless, the agreement as above stated cannot be regarded as effective for the reason that, she being covert, it was not executed in the manner prescribed by the act of assembly.

The decree is affirmed and the appeal is dismissed, at the costs of the appellant.